JAMES EDWARD CURTIS,

                      Plaintiff,

v.                                                     Case No. 19-cv-417-pp

LISA SCHWARTZ,
and LISA KUCHARSKI,

                      Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 50) AND DISMISSING CASE

      Plaintiff James Edward Curtis, who is representing himself, filed an amended complaint alleging that the defendants violated his civil rights. Dkt. No. 11. The court allowed the plaintiff to proceed on the following claims that the defendants retaliated against him for complaints and grievances he filed against them: (1) Lisa Schwartz and former defendant Jennifer Arndt signed off on an "ATR [Alternative to Revocation] document" for the plaintiff's transfer to an inpatient facility; (2) Schwartz and Lisa Kucharski restricted his movement at that facility so that he could not leave the living unit unless he had an emergency medical condition; and (3) after the plaintiff's release from the facility, Schwartz and former defendant Delnita Thomas fabricated and submitted false documents to the administrative law judge to have the plaintiff arrested and returned to prison. Dkt. No. 25 at 6.

      On February 7, 2022, the court granted the motion for judgment on the pleadings filed by defendants Arndt, Kucharski and Schwartz as to the

1

plaintiff's first and third claims. Dkt. No. 49 at 9. The court also granted defendant Thomas's motion to join that motion, and it dismissed Arndt and Thomas. Id. The plaintiff's second claim against Schwartz and Kucharski remains. On June 30, 2022, Schwartz and Kucharski filed a motion for summary judgment in which they contend that the plaintiff cannot show that they violated his constitutional rights. Dkt. Nos. 50, 51.

On July 5, 2022, the court ordered the plaintiff to file his response materials to the defendants' motion in time for the court to receive them by August 1, 2022. Dkt. No. 55. The court advised the plaintiff that if he failed to file his response by the deadline, the court had the authority to treat the defendants' motion as unopposed, accept all facts asserted by the defendants as undisputed and decide the motion based only on the arguments in the defendants' brief, without any input from the plaintiff. Id. at 2. The August 1, 2022 deadline passed, and the plaintiff did not file a response to the motion for summary judgment. The court sent the order to the address the plaintiff had provided. It has not been returned to the court as undeliverable. The court will treat the defendants' motion as unopposed, accept the defendants' facts as undisputed and decide the motion without a response from the plaintiff.

## I.  Defendants' Motion for Summary Judgment

### A.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

B. Facts

Defendant Lisa Schwartz is a Senior Probation and Parole Agent for the Wisconsin Department of Corrections Division of Community Corrections (DCC). Dkt. No. 52 at ¶2. In that role, she monitors and supervises offenders on community supervision. Id. at ¶4. Defendant Lisa Kucharski is a Program and Policy Analyst-Advanced for the DCC. Id. ¶5. Her responsibilities include ensuring programs that have contracts with DCC are providing the goods and services they have been contracted to provide an individual while that individual resides at a treatment facility. Id. at ¶7.

In April 2018, the plaintiff was convicted of bail jumping (habitual criminal) in Kenosha County Case Number 17CV1594. Dkt. No. 52 at ¶8. He was placed on probation with an imposed and stayed sentence of fifteen months of initial confinement followed by four months of extended supervision. Id. The plaintiff also was convicted of his third Operating While Intoxicated (OWI) offense from the state of Illinois. Id.

On August 28, 2018, Schwartz began supervising the plaintiff. Dkt. No. 52 at ¶9. The plaintiff transferred to Schwartz based on WI Act 100 Policy,

which states that any person convicted of a second or third subsequent OWI must be supervised by a probation and parole agent who is specifically trained in the use of SOBERLINK[1] and other ACT 100 Rules. Id. Schwartz is such an agent. Id.

The plaintiff violated the terms of his probation by, among other things, testing positive for alcohol consumption on multiple occasions. Dkt. No. 52 at ¶11. On November 27, 2018, the plaintiff was arrested for violating various rules of his probation and held at the Kenosha County Jail. Id. at ¶12. On December 5, 2018, the plaintiff signed an Alternative to Revocation Agreement (ATR) in which he admitted to four violations of his probation that occurred in November 2018. Id. at ¶13. By signing the ATR, the plaintiff agreed to participate in a ninety-day alcohol abuse residential treatment program and aftercare program and, in exchange, the DOC would not pursue revocation of his probation at that time. Id.

On December 12, 2018, Schwartz arranged for a bed for the plaintiff at Options of Kenosha. Dkt. No. 52 at ¶14. The plaintiff began the program on December 19, 2018. Id. Options of Kenosha was a structured residential treatment program in the community, akin to a halfway house. Id. at ¶16. It was designed to provide individuals with the opportunity to gain and take on responsibilities that would assist them when living independently in the

---

[1] SOBERLINK is a hand-held breathalyzer that a person on probation must blow into to test for alcohol at least five times per day at specific times determined by the client and their ACT 100 probation agent. Dkt. No. 52 at ¶10.

community. Id. While at Options of Kenosha, individuals worked closely with program staff and peers as well as community resources to achieve personal goals in a safe and productive environment. Id. Options of Kenosha is no longer in operation. Dkt. No. 52 at ¶17. When it was running, Schwartz and Kucharski were not involved in creating or enforcing the rules and standards that residents were expected to follow there. Id. at ¶¶17, 20.

Residents at Options of Kenosha were allowed to leave the facility for certain reasons as long as they followed the program guidelines. Dkt. No. 52 at ¶31. The rules and standards of Options of Kenosha were listed in the Trauma-Informed Care Program, Resident Orientation Handbook. Id. The handbook explained that when leaving the facility, residents were expected to go directly to the designated place identified on their pass and come directly back to the facility from any passes. Id. at ¶32. It also noted that staff and/or counselors would verify residents' whereabouts and confirm the time allotted prior to residents leaving. Id. Residents were required to call the house to notify staff if they experienced any difficulty in returning from their pass within the allotted time. Id.

Schwartz generally only becomes involved in matters concerning an offender who is in a residential program when something major has happened that could threaten his ability to successfully complete the program, such as if he had absconded from the program altogether. Dkt. No. 52 at ¶18. A facility may reach out to her if a resident is at risk of being terminated from the program because of refusal to participate in treatment. Id. Otherwise, she

5

rarely interacts or checks in with an individual on probation once they enter a residential program like Options of Kenosha. Id. At any given time, Schwartz has about seventy individuals under her supervision. Id. When an individual enters a residential program, she considers it a relief to her workload because she knows there are other qualified people at the program who are responsible for managing that individual's day-to-day needs. Id.

Kucharski has very little, if any, direct contact with individuals in residential programs like Options of Kenosha, unless she is randomly visiting a facility to monitor contract compliance. Dkt. No. 52 at ¶19. For example, she randomly attends residential group meetings to observe the residents and ensure the facilitator is following contract standards including established curriculum. Id. She also may randomly sit in on a group program and then ask a resident about the effectiveness of the class so she can provide constructive feedback to the facilitator, if necessary. Id.

On January 31, 2019, the plaintiff's counselor, Delnita Thomas, asked Schwartz to join a staffing regarding the plaintiff while he was at Options of Kenosha. Dkt. No. 52 at ¶21. Schwartz was asked to attend because the plaintiff was being exceptionally difficult to manage in the program. Id. During the staffing, the plaintiff, Thomas and Schwartz discussed several issues, including the proper procedure for receiving a medical appointment pass. Id. at ¶22. To receive a pass, the plaintiff needed his medical doctor to fill out the Options of Kenosha form so the diagnosis, medications and next appointment were verified. Id. Apparently, the plaintiff had failed to do this, and therefore he

6

had not received a pass. Id. Thomas stated that the proper medical pass procedure had been explained to the plaintiff when he started the program, and it was also explained in the resident orientation handbook the plaintiff acknowledged receiving and signed on December 20, 2018. Id. at ¶¶23-24. The group also discussed the plaintiff's issues with obtaining medications. Id. at ¶25. Apparently, the plaintiff's girlfriend had been coming to the program two or three times per week to bring him snacks and other items he asked for, so it was suggested that she could bring his prescriptions that he needed. Id. The staffing also included discussion of the plaintiff's diet (he had requested a diet that did not include pork and beef), and his progress in groups. Id. at ¶26. The plaintiff remained at Options of Kenosha until his discharge on March 19, 2019. Dkt. No. 52 at ¶40.

    C.    Discussion

In support of their motion for summary judgment, the defendants contend that the court should dismiss the plaintiff's retaliation claims because they lack sufficient personal involvement to be liable under 42 U.S.C. §1983. Dkt. No. 51 at 7-9. The defendants also contend that the plaintiff's retaliation claim fails because they did not take any action against him that was motivated by complaints he filed. Id. at 9-11.

The record shows that the defendants lacked personal involvement the plaintiff's retaliation claim. A reasonable factfinder could not conclude that the defendants violated the plaintiff's constitutional rights. The court will grant the defendants' motion for summary judgment and dismiss this case.

7

## II. Conclusion

The court **GRANTS** the defendant's motion for summary judgment. Dkt. No. 50.

The court **DISMISSES** this case. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 26th day of September, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**